We're now going to move to Case No. 5 of the morning, United States v. Ramirez, Appeal No. 18-2798. We'll start first, Mr. Hillis, with you. Good morning. May it please the Court. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Ramirez. He is raising one issue on the appeal, and that is whether the judge correctly denied safety valve eligibility and relief in light of the facts and circumstances here. When, at the time of sentencing, a defendant truthfully provides the government all information he has about an offense, that's part of the same course of conduct. The defendant is entitled to safety valve relief under 18 U.S.C. 3553-F5. However, the judge here denied safety valve relief because he found that Mr. Ramirez's statements to the government weren't sufficiently detailed as to, quote, other potential participants' source of supply in downstream customers. That falls clearly outside of the text of what safety valve requires, because other potential participants aren't within the scope of what my client is engaged in by way of the course of conduct. It could be anybody else doing anything else, and if that's the case, as a basis to correctly deny safety valve relief, I suppose we deny safety valve relief to everybody because there is a whole host of other people who have potential information but are not part of the same course of conduct in the offense at issue. And so the judge just misapplied the text, in our view. But furthermore, if that weren't sufficient as a reason to send this back on remand, there's a flaw in this that goes beyond that, and that is my client did disclose who his customer was. He identified Mr. Ramirez, and that is still another instance where the judge misapplied the facts to the text of what safety valve requirement is. Were we to turn to Acevedo Fitz, which is the case the government relies on, we find a lot of very stark differences between that case and this one. In Acevedo Fitz, there were multiple proffer sessions. There were proffer notes that were given to the district judge to review and to assess. Those things didn't happen here. There was, as I recall, a single safety valve proffer. It happened sort of on the spur of the moment before sentencing. My client has a very significant language barrier, required an interpreter, and after about 90 minutes, they terminated the proffer session because they thought that my client was not giving complete information. He didn't even get to the point where he was able to provide information about one of the disputed transactions and the quantity involved. Under BRAC, which is a Seventh Circuit case, you cannot hang the incompleteness of the defendant's information on the defendant when it is the government that is responsible for the incompleteness because of the termination of a proffer session or some other impediment that the government interjects that makes it impossible for the person to complete the eligibility portion of the safety valve proffer. Was it the government here or was it the district court assessing credibility during it and making a determination that your client might not have been fully forthcoming? Well, there are multiple problems with that, Judge Brennan, because if there's a safety valve issue based on credibility and there's no information provided to the judge other than counsel's argument, we don't have the proffer statements, et cetera, that were necessary for the credibility determination and Acevedo fits. So that's one problem in this. But I don't think that that would be correct anyway because the government would have to provide information that would then put it on my client to rebut and provide the detailed information. It seems to me that to show that those lapses and the lack of detail can be accounted for in his proffer. And it seems to me that he did by identifying Mr. Reyes. He does not necessarily have information about other potential participants, customers, sources, et cetera. And, again, that's a textual problem. Did I read, Mr. Hulse, wasn't the district court also focused on whether the conduct continued into that November, December time frame as well? Can you address that too? Very easily. That proffer session terminated before we could get that far chronologically. But I thought that one of the points the government makes in its brief that I'd like to hear your reaction to is that over the course of 90 minutes there were several questions asked about the continuation of the conduct and the defendant had every opportunity to address it and surely knew what was being inquired of him. I don't think that's the government's interpretation of it. But by our estimation, there's a language barrier. There's a very short window here. This is 90 minutes into a pretty lengthy period of conduct. And with the questions that are being asked, we don't even know what those are to make an assessment about were you being forthcoming or not. If we had the proffer notes, Judge Scudder, I think that we'd have a much different set of circumstances. If you don't know what's being asked, it's hard to say that my client isn't answering the questions completely and truthfully. Can you go back just briefly to your point about the interpretation of F5? The conviction here is an 846 plea, right? Right. So how is the – if we think of it as a conspiracy and potential multiple members of that conspiracy and conduct and furtherance of it, why doesn't that fit within F5? I thought maybe I was mistaken. It's just a straight up 841 plea, but it's not. It's an 846 plea. Right. So if you have conspirators, they're in a camp that is different from potential conspirators. It's as simple as that. I don't know who every potential conspirator is and who their source is and who their supply is. I can't imagine my client does either. And so when we are broadening the textual language to include potential participants, we now have an impossibility of providing the information about who it is who can get safety valve relief because you may think that somebody knows who somebody's potential clients are, but that's unfair to hang that on a client, or rather my defendant here, because he can't know who the potential participants are. I suppose it's everybody and nobody. More fairly, it's everybody. And so that's just not consistent with the text. So that's the problem. Seeing your argument in context, doesn't the government have a motivation to get this information for purposes of future prosecutions? Sure. They didn't. For the government to be charged with shutting things down precipitously seems to be contrary to what their underlying motive would be. What do you think the motive is then? Frustration by the case agents, thinking that there's somebody who's not coming through on the answers to the questions they have. And again, if we knew what those questions were, we'd have a better sense of that, Judge, but we don't. And yes, they have that, but they may simply think that they can't get anything more from him in any event, terminate, no harm, no foul on their part. The problem is there is a harm and there is a foul. My client loses safety valve eligibility because they pulled the plug on the proffer. Can I turn briefly to the harmlessness? Because the government is expectedly relying on harmless air, but there is a problem with that. Everything that I've just explained is baked into a rejoinder to the harmlessness, and that is, when the judge is incorporating a lack of honesty, a lack of providing the necessary detail, not giving information about drug quantities for a time in the chronology that's cut off because they pulled the plug on the proffer session, then everything the judge is saying by way of his explanation for an alternative rationale is now infected with the very same problems that we say was a difficulty and made the proffer session really an impossibility for my client. So the judge cannot, on the one hand, deny safety valve relief for the proffer session being incomplete and then turn around and say, I would give the same sentence regardless of the safety valve issue because you didn't give complete information and you didn't tell me completely about the proffer. I read the transcript differently, and you can correct me if I'm mistaken on it, but I read the Salgado statement as more driven by what the district court saw as obstruction at the plea. So the conduct at the time of the plea would, of course, be different about what the facts are relevant to the safety valve proffer. Sure. And it would seem to me that there's a language barrier and there's a problem about getting your footing for the plea to admit only what is necessary to admit for the plea. And you shouldn't, as a defendant or as defense counsel ever, have somebody admit conduct that goes beyond what the elements are unless it's part of a plea agreement. And in this case, my client was trying to be careful, and, of course, there's a language barrier, et cetera. But he's trying to navigate that, and that's different from the safety valve. But that's what seemed, from my reading of the transcript, to trouble the district judge. Is that fair? Yes. I mean, he tied it very directly to the plea, but I'm saying that that is, again, relevant to what the information was that was given during the safety valve proffer. Those are related things, Judge. Those are about the facts in one event that precedes then. In particular, the brother, right? The brother's role or lack thereof or whatever. Right, and I have to credit the district court judge. He said that these are difficult circumstances where you have a family member who's implicated in this, so he's trying to be respectful of that family relationship.  If I can reserve the balance of my time, I will. You may. Thank you. Thank you, Mr. Hillis. We'll now move to Ms. O'Neill on behalf of the government. May it please the Court. My name is Christine O'Neill, appearing on behalf of the United States. The district court did not commit clear error in denying the defendant safety valve relief. The district court finding was supported by the record, and there were three different areas the district court pointed to in which the defendant was not truthful. Any one of them provided a concrete fact-based rationale for rejecting the defendant's argument that the safety valve applied. First, the defendant claimed he believed the backpack seized on March 9th contained only one kilogram of heroin. This was contradicted by the record in several different areas. The calls with the supplier where they discussed a replacement for two kilos of heroin were before the district court as part of the pre-sentence report. Additional calls where they discussed that the defendant would be picking up 11 little boxes, the fact that the backpack ultimately had over 10 kilos of heroin in it, any of these would be sufficient grounds for the court to discredit the defendant's statement that he believed there would only be one kilo in that backpack. Second, and as the appellant discussed here today, the defendant did not provide complete information about the scope of his conduct and that of his co-conspirators. And here I'd like to respond to some of the discussion that took place already. The defendant, of course, at his plea, is not required to admit anything beyond the elements. But in a safety valve proffer, the defendant is required to come in and admit the entirety of the conduct charged and other conduct that is part of the same scheme or plan. Here the defendant was charged with four other named individuals and others, one explicitly referenced in the charging as Individual A. And as the district court held, he did not come clean about all of those individuals. The defendant stated he got no heroin from any supplier besides the co-defendant, Macias, when the district court had calls before it where there are discussions with an unnamed supplier, not Macias, and the defendant never came clean about that person. He offered no specifics on transactions with customers, and he had to be confronted with a name before he admitted to one customer that he had in Milwaukee. Finally, the defendant omitted any mention of narcotics trafficking that continued past March 2016 when he was involved in a narcotics transaction that took place in December 2016. The defendant doesn't just have to answer questions that the government poses to him in a safety valve proffer. The law is clear that the defendant has to come in intending to admit the conduct. Here the defendant was well on notice that the December 2016 conduct was something the government was interested in. It was referenced in the pre-sentence investigation report, it was referenced in the government's sentencing memo that was already filed at the time of the safety valve proffer. The December distribution was part of the same common scheme or plan. It was the same heroin, the same gold car the defendant used. It was close in time, and it involved the same address that the defendant was at throughout the duration of the conspiracy. Ms. O'Neill, on this particular point in your red brief on page 5, you include a fair number of details. I can describe it to you, you'll remember it. About this December 9, 2016 transaction involving this fellow, Choa. Yes. Was the defendant in the safety valve proffer confronted with details akin to those laid out in your brief? I don't believe that information is in the record. I can answer the question if the court would like. Yeah, I mean, I was just curious. I mean, there's a whole bunch of it. He wasn't forthcoming about the December, and I just wonder, you know, how much detail? Was he given an opportunity? He was not specifically confronted with those details in the safety valve proffer, Judge. As I stated, those details were in front of him in the sense that they were in the PSR, they were in the government's sentencing memorandum. Which was given or Defense Counsel had a copy of at the time? That's correct. Thanks. Finally, any error that the court were to find here would be harmless due to the district court's statement that it would have imposed the same sentence, regardless of whether the safety valve applied. If there are no further questions, the government requests that the court affirm the district court's judgment. Thank you, Ms. O'Neill. Mr. Hillis, we took you into your rebuttal time, so we'll give you an extra minute for two minutes. Thank you. The quantity was one of the things the government mentioned, but at the appendix page 9, there was an explanation that my client gave about having not looked in the backpack. So if he didn't look in the backpack, he wouldn't know what the quantity was. And so in any event, I understood that he would be getting one kilogram of whatever the substance was, heroin. And if there was additional quantities in there, that may not have been something that he was interested in anyway. It wasn't part of his transaction with the supplier. Calls with others, that's fine and well, but you can make calls to somebody. If they didn't supply you with the drugs, then they're not your supplier. They may have been a potential supplier. I don't know the particulars of those calls are not in the record. My client did, as the government said, identify Mr. Reyes. He was his supplier. And so it took some prompting, the government says, but the information was ultimately provided by my client when asked, who was your supplier in the Milwaukee area, and he identified Jose Reyes. So that was given, and it's not a matter of did it come easily or with a little effort, but whether it was provided at all, and it was. As far as the December conduct goes, the government ended the proffer. If it's going to rely on matters outside the record, I am in a bad position here because I don't know what those facts are, and I don't like to ever come up and have to respond to matters that were outside of the record, as I don't think the court's supposed to be relying on that anyway. But the proffer session was very definitely terminated around the November mark, before we get to December chronologically. If there's information in the PSR that suggests my client should have given more information, and I would like to know what it was, and of course my client wanted to know that too, so that he could have buttoned that down and gotten the safety valve relief. And I don't know that there is anything in December that wasn't already accounted for or couldn't have been accounted for, but in any event, we think a remand is appropriate. So we do not have instances where people can't get safety valve who might be entitled to it. It's an important thing. Thank you very much. Thank you, Mr. Hillis. Thank you, Ms. O'Neill. The case will be taken under advisement.